DART and others, executors &c., *vs.* THE FARMERS' BANK AT BRIDGEPORT.

When a foreign corporation has appeared, in an action commenced here, it is as much within, and subject to, the jurisdiction of the court, as if it was a corporation under the laws of this state.

Although, for the purposes of certain provisions of the statute of limitations a foreign corporation can never come within the description of those who are called residents, so as to allow the statute to run against it, yet its foreign origin does not prevent the bringing of actions against it, for any cause, when such corporation can be brought within the jurisdiction of the court.

Where a debtor conveys property to his creditors, in payment and satisfaction

of a debt, and the same is levied upon and taken by a creditor of the grantor, under an execution, the grantee is entitled to recover the possession thereof on proof of a fair consideration, an open and notorious taking of possession, the absence of any intent to defraud on his part, and a continued possession after the purchase.

Where the questions of fact are of such a character, and the evidence in regard to most of the questions so conflicting, that they can only be disposed of by the finding of a jury, the court will not interfere with their verdict.

THIS case involves the question of title to personal property: The action was brought against a judgment creditor of the vendors, by the executors of the vendee, to recover the value of property seized and sold under execution against the vendors. The vendors were indebted to the vendee in a large amount, for cash advanced. The property was transferred to the vendee, partly for the debt and partly for a new consideration. The vendors were the sons of the vendee. He had started them in business in Jan. 1847, and had then given them several thousand dollars as a cash capital. He subsequently lent them money as they required it in their business. In October, 1851, he held their notes for $16,400, and their bonds for $8,500. They applied for further advances. He declined, and requiring payment, they sold and transferred the property to him. He gave, for personal property, which they estimated at $21,500, and for real estate estimated at $4000, making in all $25,700, (but which he estimated at only half that value,) the notes and bonds above mentioned and about $8000 in cash advanced at and about the time of the transfer. The publicity and notoriety of the transfer were admitted. Peter H. Schenck, the vendee, took the entire control of the business from the day of his purchase up to the time of his death. After his death, the defendant seized and sold the property, on the alleged ground that the sale was fraudulent. The sale and transfer were made on the 25th of October, 1851. Courtney Schenck & Brother, the vendors, had hired from the Colburn Manufacturing Company the 2d, 3d and 4th stories of a mill at Ansonia, Connecticut, for one year from March 20, 1850, with the privilege of four years more. They had put into it various

movable machinery. The lease and the movable machinery were all transferred to Peter H. Schenck. He became the tenant of the Colburn Manufacturing Company, used the machinery, and carried on business there, till his death, which occurred in September, 1852. Upon his death, his executors, the present plaintiffs, took possession of the property, and carried on the mill till December, when they allowed Charles Wells, a son-in-law of Mr. Schenck, to go into the mill, and work it, for his own benefit, but without any fixed term. On the 9th of April, 1853, executions were issued on two judgments obtained by the Farmers' Bank of Bridgeport, against Courtney Schenck and Brother, which executions were levied on the 30th of April, and a sale of the movable machinery was made on the 21st of May, 1853. The records of these judgments, and of two others not necessary to be considered here, were set out in the case. The justification attempted by the answer rested solely on these executions. The executors claimed that the sale was made in good faith, for a full consideration, and without fraud.

The defenses were, (1,) a denial of the plaintiff's title; (2,) a levy and sale under executions against Courtney and Edward Schenck, from whom the plaintiffs' testator derived his supposed title by a transfer alleged to be fraudulent and void as against the defendant, a creditor of said Courtney and Edward Schenck, both as a conveyance to delay, hinder and defraud creditors, and also as a preference of a creditor by such debtors in view of insolvency, contrary to the statutes of Connecticut.

The action was tried at the New York circuit, in February, 1856, before Justice WHITING. At the close of the testimony, the counsel for the defendant requested the judge to charge the jury, 1. That as against the defendant, being a creditor of the firm of C. Schenck & Bro., the transfer of the property in question to Peter H. Schenck, being partnership property of that firm, could be supported so far as related to its consideration resting in antecedent debt, only by a *bona fide* debt of

the said firm to Peter H. Schenck held by him against the said firm, and that if any part of the consideration of the transfer was made up of the several debt of Courtney Schenck, or of Edward Schenck, or of debts which had been relinquished by the father to his son, as not to be claimed of or enforced against them adversely, the transfer was fraudulent and void as against the defendant.  2. That so much of the consideration of the transfer as was made up of the several bonds of Courtney Schenck and of Edward Schenck was not the partnership debt of C. Schenck and Bro., and that those bonds being included in the consideration of the transfer of the partnership property, such transfer was void as against the defendant, a partnership creditor.  3. That the consideration of the transfer including the sum of $6000 in bonds of Courtney Schenck and of Edward Schenck which had been struck out of his assets by Peter H. Schenck in January, 1850, such debt could not be revived to serve as a consideration for the transfer of the property in question, as against the defendant, and the transfer being supported in part by such consideration, was fraudulent and void as against the defendant.  4. That Peter H. Schenck in taking this transfer upon the consideration of antecedent debt and with notice of the insolvency of the debtors, was not in the right of a *bona fide* purchaser for value, and that if the transfer was made by Courtney Schenck and Edward Schenck with the intent to delay, hinder or defraud their creditors, such transfer was fraudulent and void as against the defendant, although Peter H. Schenck did not participate in such intent. 5. That the transfer of the property in question was not complete to pass the title except by actual delivery and change of possession, and that the property in question being situated in Connecticut, and the delivery made there, the validity of the transfer must be judged by the law of Connecticut; and if the jury should find that the transfer was made with intent to give one creditor a preference over other creditors, and that the debtors were insolvent at the time, the transfer was fraudulent and void as against the defendants.   The judge refused

to charge as requested, but charged as follows: That if they were satisfied and found from the evidence that the bill of sale was duly executed and delivered, and the property in the mill was delivered to Peter H. Schenck or his lawfully authorized agent, and that he or his agents continued in the possession of the property, then the title passed. That to make a bill of sale valid against creditors or *bona fide* purchasers, there must be a continued change of the actual possession. If there was any secret trust, or the transaction was fraudulent, the sale would be void as against the creditors of the sons. If the purchase by P. H. Schenck was honest and *bona fide*, and he paid the full and fair value for the property purchased, and there was no secret trust for his sons, or any secret trust, then the law would uphold such a sale. If P. H. Schenck had paid in cash, at the time of the bill of sale, the full value of the property, and it was done with the object and intent to cover the property, and with a fraudulent intent to cheat and defraud the creditors of the sons, the sale would be fraudulent and void as against them, and the plaintiffs could not recover. If a part of the consideration was paid in cash, and the remainder was in a *bona fide* antecedent debt, the consideration would be good—indeed if the whole consideration was for an antecedent debt, honestly and fairly due, and the sale was in payment of that, and the sale *bona fide* free from any secret trust, followed by an actual and continued change of possession, then the title of P. H. Schenck would be valid. The mere fact that the consideration was an antecedent debt would not make the sale void. The true question was, whether the sale was honest and fair, and without fraud. If a portion of the liabilities given up were not a partnership indebtedness, and there was not, aside from that, a fair consideration otherwise paid for the property, then the sale would be void. But if the money loaned by P. H. Schenck, and for which the bonds were given, was, in fact, a loan to the firm, and the money borrowed went into the business of the firm, then in equity the partnership property, with the consent of

the firm, might lawfully be applied to the payment of such bonds. If, however, when P. H. Schenck loaned the money he intended to loan it solely upon the responsibility of the separate partner, then the partnership property could not be applied to the payment of the separate debts of the partners, to the exclusion of the copartnership creditors. If the moneys advanced, from time to time, by P. H. Schenck, were absolute gifts to his sons, either to enable them to start or continue in business upon capital so furnished or otherwise, then they could not be claimed as valid existing debts as against the creditors of the sons. If Peter H. Schenck gave them the money, or advanced the money, as loans, and actually canceled the debt as against them in his books, he could not revive them against his sons, so as to make them valid debts as against the creditors of the sons. If the loans were honest, and the transaction fair, and not a revival of old debts, that had been extinguished, then the debt might be paid by the sons with their property. That if the sale was for the benefit of the sons, it was void. To uphold the sale the jury must find it to have been at a fair value, with a *bona fide* intent on the part of the purchaser and seller to make it valid. That if the jury should find that a fair consideration was paid; that Mr. Schenck took possession in an open and notorious manner; that the transaction was without any intent to defraud the creditors of the sons, on the part of Peter H. Schenck; and that he continued in possession, the plaintiffs were entitled to a verdict for the value of the property. That if there was no actual debt equal to the value of the property sold, or if the transfer was for the benefit of the sons, or intended to be for their benefit, then the defendants were entitled to a verdict.

The plaintiffs' counsel excepted to the charge as far as it related to an antecedent debt, and as far as it did not agree with the requests to charge. The defendants' counsel excepted to the charge so far as it differed from his requests to charge, and also excepted separately to each of the refusals to charge as requested. The jury found a verdict for the plaintiffs for

Dart *v.* Farmers' Bank at Bridgeport.

$7000 damages. The counsel for the defendant then moved, upon the minutes of the judge, for a new trial, on the ground that the verdict was against the charge of the court and against the weight of evidence. The court denied the motion, and the defendants' counsel excepted, and appealed to the general term of the court from the order denying such motion. And thereupon a case was made by the defendants with liberty to either party to turn it into a bill of exceptions or special verdict, and the court directed such case and exceptions to be heard in the first instance at a general term.

*R. Fayerweather,* for the plaintiffs.

*W. M. Evarts,* for the defendants.

*By the Court,* INGRAHAM, J. 1. The representative character in which the plaintiffs bring their action, and their right to bring this action in that capacity, is not disputed by the pleadings. The complaint avers that the plaintiffs are the executors of Peter H. Schenck, deceased, and makes profert of the letters testamentary. The answer in no way denies such executorship, or such letters. For the purposes of this action it must be taken as true that such letters testamentary were granted, and were sufficient. The averment is not that letters were issued in this state, and without some denial of the plaintiffs' right to represent the estate, the defendants are precluded from setting the objection upon the trial.

2. The defendants having appeared in the action, are, for the purposes of this action, as much within, and subject to, the jurisdiction of this court as if they were a corporation under the laws of this state. It is true that for the purposes of certain provisions of the statute of limitations, they can never come within the description of those who are called residents, so as to allow the statute to run against them; but their foreign origin does not prevent actions against them for any cause when they can be brought within the jurisdiction of the court. (1 *Denio,* 441.) It was urged, on the argu-

ment, that the plaintiffs had no right to the property when the trespass was committed; but their title to the property was a question of fact, as to which there was ample testimony to sustain the finding of the jury. There was evidence that Peter H. Schenck had taken possession of the property during his life, and employed Servoss to go on manufacturing on his account; and that the business was carried on in his name, and bills made out in his name. The evidence also showed possession, on the part of the plaintiffs, after the death of the testator, and that the executors carried on the business a few months. Mere possession by the executors would be sufficient to maintain trespass, against a wrongdoer, and there can be no doubt of the sufficiency of this evidence to sustain the finding of the jury on this point.

3. Whether there was fraud or not, as against creditors, in the transfer of the property to Peter H. Schenck, was a question belonging to the jury, under the evidence; and if the judge, in his charge, refused to submit to them the question, as he was requested to do by the defendants' counsel in the fourth request to charge, it would have been erroneous. It is stated that the judge refused to charge as requested, but this refers to all the requests collectively. In his charge, however, it appears that he did submit to the jury the question of fraud in the transfer, when he told them that fraud vitiated the contract, and that the law would not allow an assignment to be made by a debtor for his own benefit, or to hinder, delay or defraud his creditors.

4. The next objection is to the charge of the judge, which stated that the plaintiffs were entitled to recover, on proof of a fair consideration, an open, notorious taking of possession, a freedom from an intent to defraud on the part of the testator, and a continued possession on the part of the testator after the purchase. The cases referred to by the defendants' counsel do not apply in this case. The sale to the testator, here, was an absolute one; was made in payment of debts due, and in part of advances then made, and was neither a

voluntary conveyance without consideration, nor an assignment for the benefit of creditors. In *Mead* v. *Phillips,* (1 *Sandf. Ch. Rep.* 85,) the transfer was to assignees for the benefit of creditors. In *Mohawk Bank* v. *Atwater,* (2 *Paige,* 54,) the transfer was under a voluntary conveyance of a father to his son, without any consideration. And in *Rathbun & Dow* v. *Platner,* (18 *Barb.* 272,) the deed of assignment was for the benefit of creditors. In regard to all such conveyances, in the latter case Judge Mason says, "our statute pronounces void all such assignments which are made with the intent to hinder, delay or defraud creditors, * * * * when the assignees have been perfectly free from the imputation of fraud; but the court, at the same time recognizes the distinction between these cases and that of a debtor who conveyed property directly to his creditor in payment and satisfaction of a bona fide debt, where the conveyance was upheld, although it was made by the debtor with intent to hinder, delay and defraud other creditors, if the grantee was not a party to the fraud. The case of *Waterbury* v. *Sturtevant,* (18 *Wend.* 353,) is a full authority on this point. Senator Edwards, in that case, says, "In order to make the conveyance fraudulent and void as to the grantee, fraud or a fraudulent intent must be shown on his part, as well as on the part of the grantor. To render the conveyance void there should be a fraudulent motive on the part of the purchaser as well as the seller." There was no error in the charge of Mr. Justice Whiting on this point.

5. The charge in regard to the character of the indebtedness, and whether it was the individual indebtedness of the sons, or the indebtedness of the firm, distinctly submitted those questions to the jury, with the instruction that if the liabilities given up were not those of the partnership the sale would be void. The charge contained all that the defendants had a right to insist upon, on that point, and left those questions, as we think, fairly to the jury.

6. Several exceptions were taken to the rulings of the court

as to the admission of evidence.   They were not particularly noticed on the argument.   In examining them, we have not been able to see that any error was committed in regard to any of them by the decisions.

There does not appear to have been any error of law in the course of the trial, which would sustain the court in reversing the judgment, and the questions of fact are of such a character, and the evidence in regard to most of the questions so conflicting, that they can only be disposed of by the finding of the jury.   In such a case the court cannot interfere with their verdict.

The judgment should be affirmed.