JOHN J. HOWELL and JOSEPH M. DEVEAU *vs.* THE CHICAGO AND NORTH WESTERN RAILWAY COMPANY and others.

However objectionable the issue of stock dividends by a corporation, may appear to be, as bearing upon the value of the stock, such considerations are more properly to be addressed to the board of directors than to the court, on a motion to continue an injunction.

Under ordinary circumstances, where a corporation has earned a dividend, and it desires to retain the moneys so earned, for the purposes of the company, either in making improvements on its property or for the payment of its debts, it would be no violation of law to retain such moneys and in lieu thereof to issue to the stockholders a corresponding amount of stock.

The election to do either rests with the board of directors, and if the company has the power to increase the capital stock, for any purpose, either mode of making such increase is not a violation of law, and affords no ground for an injunction to restrain them.

If a corporation has the power to increase its capital, it is immaterial whether such increase is made by awarding the stock to stockholders as dividends, in lieu of money, retaining the money for the purposes of the company, or by paying the stockholders the dividends in cash from the earnings of the company and selling the stock in the market, to raise money for the use of the corporation.

It may be doubted whether a statement, made by a board of directors, in a report, avowing their determination not to make any further increase of the capital stock, would be sufficient to warrant the restraining of the company from doing an act expressly authorized by statute; or even if it had such an effect, as to the board by which it was made, whether any subsequent board could thus be deprived of the powers conferred upon it by law. *Per* INGRAHAM, J.

By an act of consolidation, between railroad companies, it was agreed that the preferred stock should be entitled first to seven per cent from the income of the consolidated road; then the common stock was to have seven per cent; then the preferred stock was to have three per cent further; and afterwards the common stock could share in the balance. Subsequently, a dividend was declared by which ten per cent on the amount of the capital was awarded to both classes of the stock, but such dividend was made payable in preferred stock to the holders of preferred stock, and in common stock to the holders of stock in that class. By this distribution, at the then value of the stock, the holder of a share of preferred stock received stock to the market value of about $8, and the holder of a share of common stock received stock to the value of about $7. *Held* that this gave to the holder of the common stock all he had a right to claim, and all that he was entitled to until the dividend of the preferred stock amounted to ten cent. And that whether, therefore, the dividend was estimated in the nominal

value of the stock, or as the cash value, there was no departure from the contract with the holders of the preferred stock, in such dividend.

Previous to the Code, foreign corporations were not the subject of litigation in the courts of this state, except when proceeded against by attachment of their property for the collection of a debt or the redress of a wrong. And the Code was not intended to extend that power any further than it existed at that time; although the language of the Code is more general, and might be construed more liberally.

Although it is the duty of the state to provide for the collection of debts from foreign corporations, due to its citizens, and to protect its citizens from fraud, by all the means in its power, whether against domestic or foreign wrongdoers, this does not authorize the courts to regulate the internal affairs of foreign corporations. The courts possess no visitorial power over them.

The court will not enjoin the directors of a foreign corporation from paying a dividend, where no debt is due to the plaintiff, and he has no claim for redress for any wrong, and his only ground for the injunction is a supposed error on the part of the directors in making the dividend.

For such a cause he must seek redress in the courts of the state where the company was incorporated; unless *fraud* is contemplated, by which the property of stockholders who are cirizens of this state is placed in jeopardy.

Although it be not affirmed that in no cases should the courts exercise jurisdiction; yet even if the power exists to compel a foreign corporation to come into our courts and become a party to litigation here, still, where the cause of action arises abroad; where it affects only the internal government of the corporation; where the judgment, if rendered, cannot be in any way enforced against them, except by injunction against individual members of the corporation; and the party has an ample remedy in the state where the corporation has a legal existence; the courts here may well decline exercising an equitable jurisdiction, in such a case. *Per* INGRAHAM, J.

MOTION to continue an injunction restraining the payment of a dividend.

The plaintiffs, claiming to be the owners of bonds and common stock of the Chicago and Northwestern Railway Company, ask an injunction against the defendants, to restrain them from paying a stock dividend declared by them on the preferred and common stock. The dividend was to be paid to each class of stockholders, in the same kind of stock as that held by them. The plaintiffs claim that the company has no authority to make stock divi-

dends, and if they have, that the distribution is unequal in giving preferred stock to one class and common stock to the other; and they also claim that the company is bound by a previous resolution, adopted by them, not to issue any preferred stock beyond the amount at that time in existence.

*J. T. Pierce* and *C. A. Rapallo*, for the plaintiffs.

*S. J. Tilden*, for the defendants.

INGRAHAM, J.   However objectionable the issue of stock dividends may appear to be, as bearing upon the value of the stock, such considerations are more properly to be addressed to the board of directors than to the court on such a motion as the present.   Under ordinary circumstances, where the company has earned a dividend, and they desire at the same time to retain the moneys so earned, for the purposes of the company, either in making improvements on the road or for the payment of its debts, it would be no violation of law to retain such moneys and in lieu thereof to issue to the stockholders a corresponding amount of stock.   The election to do either rests with the board of directors, and if the company has the power to increase the capital stock, for any purpose, either mode of making such increase is not a violation of law, and affords no ground for an injunction to restrain them.

That this company has the power to increase its capital stock, both preferred and common stock, is apparent from the charter and laws relative to the corporations which are united in the present corporation, and by the acts authorizing the consolidation, both of the state of Illinois and the state of Wisconsin, as well as the articles of consolidation.

Having this power to increase its capital, it becomes immaterial whether such increase is made by awarding

the stock to stockholders as dividends in lieu of money, retaining the money for the purposes of the company, or by paying the stockholders the dividends in cash from the earnings of the company and selling the stock in the market to raise money for the use of the corporation.

In the present case the stock is passed to the stockholders at its par value, while if sold in the market it must have been so sold at a discount of twenty per cent; and to that extent it benefits the stockholders, if a dividend of ten per cent was to be declared.

It is urged, however, that the company, in their report made in 1865, avowed their determination not to make any further increase of the capital stock, however urgent the necessity for it might be.

It may be doubted whether such a statement made in a report of a board of directors, would be sufficient to warrant the restraining the company from doing an act authorized expressly by statute; or even if it had such an effect, as to that board by which it was passed, whether any subsequent board could thus be deprived of the powers conferred upon it by law. It formed no part of the terms on which the bonds were subscribed for, and can be considered as nothing more than an expression of a line of policy which the then existing board of directors thought it best to adopt, but which their successors were by no means bound to adhere to or follow.

It is also objected that this dividend is unequal. By the act of consolidation it was agreed that the preferred stock should be entitled first to seven per cent from the income; then the common stock was to have seven per cent; then the preferred stock was to have three per cent further; and afterwards the common stock could share in the balance. In this dividend, ten per cent on the amount of the capital has been awarded to both classes of the stock, but such dividend is made payable in preferred stock to the holders of preferred stock, and in common

stock to the holders of stock in that class.   At the present value of the stock the holder of a share of preferred stock receives stock to the market value of about $8, and the holder of a share of common stock receives stock to the value of about $7.   This gives the holder of the common stock all he has a right to claim, and all that he is entitled to until the dividend of the preferred stock amounts to ten per cent.   Whether, therefore, the dividend is estimated in the nominal value of the stock, or as the cash value, it appears that there is no departure from the contract with the holders of the preferred stock in the dividend now declared.

That the issue of additional preferred stock may have the effect to increase the amount of that class and thereby reduce the income which would be applicable to a general dividend is probable, but the same result would follow from a sale of preferred stock in the market, which I think the company would have the power to do, under their charters.

From the examination I have given to these questions I am of the opinion that there is nothing in the acts complained of in regard to the dividend, which shows any unauthorized or illegal act, or which authorizes the supposition that any fraudulent intent existed, on the part of the directors, in making this dividend.   On the contrary, they have acted in compliance with the wishes of a very large majority of the stockholders of both classes, as expressed by their votes in favor of this dividend.   Although that would afford no reason why the company should not be enjoined from doing a fraudulent or illegal act, yet it does afford to the board of directors an approval of their course, and is entitled to consideration when the question becomes one of expediency and not of legality.

There are, however, other considerations which, in my judgment, should have a controlling influence in the decision of these questions.   This corporation derives its

Howell *v.* Chicago and Northwestern Railway Company.

existence from the legislation of other states than that of New York. No part of its road or franchise is exercised within this state, and we can in nowise reach the corporation, except by attaching property within the state. Some of its directors reside here, and they may be forbidden to act, but such an injunction can be rendered nugatory at any moment by a resignation and substitution of others in their places. A disobedience of the order of the court can be obviated by keeping the office of the company, and appointing directors living in other states. Previous to the Code, foreign corporations were not the subject of litigation in the courts of this state, except when proceeded against by attachment of their property for the collection of a debt or the redress of a wrong. I do not think the Code was intended to extend that power any further than it existed at that time. It is true the language of the Code is more general, and might be construed more liberally. But when we remember the utter inability of the courts to enforce any other remedy beyond the bounds of the state, it will be apparent that such litigation will in most cases prove useless. It is the duty of the state to provide for the collection of debts from foreign corporations, due to its citizens, and this has been done; and it is the duty of the state to protect its citizens from fraud, by all the means in its power, whether against domestic or foreign wrongdoers. This, however, does not authorize the courts to regulate the internal affairs of foreign corporations. The courts possess no visitorial power over them. We can enforce no forfeiture of charter for violation of law; nor can we remove directors for misconduct. These powers all properly belong to the courts of the state from which they derive their existence. It is for these reasons I think there is no propriety in enjoining the defendants, in the present case. No debt is due to the plaintiff. He has no claim for redress for any wrong, and his only ground for the injunction is a supposed error

on the part of the directors in making the dividend. I think for such a cause he must seek redress in the courts of the state where the company was incorporated; unless as in some other cases that have been before us, fraud was contemplated by which the property of stockholders who were citizens of this state was placed in jeopardy. No fraud is charged, in this case, and even if it had been, it is fully disproved by the affidavits submitted on this motion.

There has been a wrong impression entertained since the decision of *Griffith* v. *Scott and others,* in this district, that the court intended in that case to hold that we had jurisdiction and should exercise it, in all cases, over foreign corporations. That case warranted no such conclusion. There the charge was a fraudulent contract between individuals who were directors of two companies at the west, by which the stockholders in one of the companies would have been deprived of all interest therein, and would be without redress. Those directors lived in New York, and others here were connected with them, in the arrangement, who were only to be reached by proceedings here.

So in *Dart* v. *The Farmers' Bank,* (27 *Barb.* 337,) the action was to recover property from the defendants belonging to a resident in New York, and the appearance of the defendants, in the action, was held sufficient to make them subject to the jurisdiction of the court, on that account.

Views similar to those which I have here expressed were stated by ROOSEVELT, J. in *The Cumberland Coal Company* v. *The Hoffman Coal Company,* (30 *Barb.* 159, 171.) He says: "Foreign corporations may, in some instances, sue or be sued in our courts, but to warrant the proceeding, there must be either a necessity or a fitness suggested by the peculiar circumstances. The cause of action, or the subject, or at least some property to be acted upon, must

have arisen or be situated within our jurisdiction. Without these qualifications, or one of them, the judgment, should the court render it, would be a nullity. It would operate on nothing in the state, and be regarded by nothing out of it."

I do not mean to be understood, that in no cases should the courts exercise jurisdiction; but even if the power exists to compel a foreign corporation to come into our courts and become a party to litigation here, still, where the cause of action arises abroad, where it affects only the internal government of the corporation, where the judgment, if rendered, cannot be in any way enforced against them, except by injunction against individual members of the corporation, and the party has an ample remedy in the state where the corporation has a legal existence, the courts here may well decline exercising an equitable jurisdiction in such a case.

The conclusion to which I have arrived is, that there is no ground for continuing this injunction.

Motion denied.

[NEW YORK SPECIAL TERM, June 27, 1868. *Ingraham*, Justice.]