# CLARK

*v.*

# THE MUTUAL RESERVE FUND LIFE ASSOCIATION.

EQUITY PLEADING; MUTUAL LIFE INSURANCE; FOREIGN CORPOR-
ATIONS; EQUITY JURISDICTION.

1. Mere allegations in a bill in equity of the effect and operation
   of the charter or by-laws of a corporation are not facts that
   are admitted by a demurrer.
2. An allegation in a bill in equity filed by a member of a mutual
   insurance company against the company, as to what consti-
   tutes the contract of insurance between the complainant and
   defendant, is merely the statement of a conclusion of law, and
   is of no force and effect as against a demurrer, especially
   where the by-laws, rules, regulations and circulars referred to
   are not set out as parts of the bill.
3. The member of a mutual insurance company is bound by its con-
   stitution and by-laws, whether he has actual knowledge of
   them or whether they are referred to in the certificate held by
   him or not.
4. The act of Congress of January 26, 1887, Ch. 46, Sec. 4 (24 Stat.
   366), requiring foreign insurance companies doing business in
   this District to have agents here upon whom service of process
   in suits against the companies may be had, does not make such
   companies corporations of this District.
5. A suit in equity to enjoin a foreign mutual insurance company,
   to which all assessments are payable at its home office, but
   which has an agency and carries on business in this District,
   against collecting from a member resident here, excessive and
   illegal assessments, and against forfeiting his policy for non-
   payment of such assessments, and also seeking an accounting
   and discovery of the books and papers of the corporation and
   the determination of the true basis of assessment, is not main-
   tainable in this jurisdiction, as the relief sought would require
   the control, direction and revision of the internal affairs of
   the corporation.

No. 830. Submitted October 20, 1898. Decided February 7, 1899.

HEARING on an appeal by the complainant from a decree

of the Supreme Court of the District of Columbia sustaining a demurrer to and dismissing a bill against a foreign corporation doing business in the District for an injunction, accounting, etc. *Affirmed.*

The COURT in its opinion stated the case as follows:

The bill in this case was filed by the appellant, Edward Clark, of the District of Columbia, against the Mutual Reserve Fund Life Association, a corporation created under the laws of the State of New York, for the purpose of having enjoined the defendant association from enforcing or attempting to enforce certain assessments made upon the plaintiff, a member of the association, and to have adjudged and declared as null and void certain changes and increase in the rate of assessment, from the rate fixed in the policy or certificate of membership issued to the plaintiff, and for other relief prayed.

The defendant association is a mutual life insurance corporation, conducting the business of life insurance upon the co-operative or assessment plan. It was incorporated under the law of the State of New York, and its home office is in the city of New York. It has a numerous membership and its funds amount to very large sums. The plaintiff became a member for the benefit of his wife, on the 14th of March, 1882, and he claims to be entitled to an insurance, by virtue of the certificate issued to him on the date just named, for $10,000, at certain fixed rate of assessment, according to a table of rates endorsed on the certificate.

In the certificate of membership it is stated that, in consideration of the statements, representations and warranties contained in his application, and of the admission fee paid, and of the dues for expenses to be paid, etc., "and of all mortuary assessments, *payable at the office of the association* within thirty days from the date of each notice," etc., the plaintiff was admitted as a member of the association. And by the certificate it is agreed and covenanted, that in the

event of the decease of a member holding a certificate, and the death fund is insufficient to meet the existing claim by death, an assessment upon the entire membership for such a sum as had been established by the board of trustees, according to the age of each member, as per table endorsed thereon, at the date of entry,—that is, the date upon which the plaintiff became a member of the association,—shall be made; and from the sum received from such assessment, the defendant association shall have the right to set aside twenty-five per cent. of the amount so received as a reserve fund; and that the balance shall be paid, *at the office of the association* in the city of New York, to the wife of the plaintiff, or, if she be dead, to his legal representatives, within ninety days after the receipt of satisfactory evidence of the death of the plaintiff, from the death fund at the time of said death, the sum so to be paid, however, not to exceed the sum of $10,000; and no claim shall be otherwise due or payable, except from the reserve fund as thereinafter provided. The certificate contains various other provisions in regard to the maintenance of a reserve fund, and a death fund, but which provisions are not material to be stated here; as the questions presented do not involve their consideration.

It is one of the provisions of the certificate, that no alteration of the terms of the contract shall be valid, and no forfeiture thereunder shall be waived, unless such alteration or waiver shall be in writing, and signed by the president and one other officer of the association. And it is further provided that the certificate is issued and accepted subject to the express condition, that if any of the payments above stipulated *shall not be paid when due, at the office of the association* in the city of New York, or to an agent of the association furnished with a receipt signed by its president or secretary, the said certificate shall be null and void, and all payments made thereon shall be forfeited to the association.

It is alleged in the bill that the plaintiff has regularly

paid all dues, and all assessments made upon him down to 1898. That the rate of assessments for the death fund, fixed at the time of issuing the certificate of membership to the plaintiff, was $2.80 per thousand dollars, the plaintiff then being fifty-nine years of age, making the annual amount of $28 upon his policy of $10,000. The table of rates of assessment is printed on the back of the certificate of membership.

It is alleged that, from the date of the policy or certificate until about August 15, 1895, the plaintiff paid assessments when called upon at the rate stated in the table endorsed on the back of the certificate for a person of fifty-nine years of age,—that is, $2.80 per thousand dollars. But, in 1895 the defendant association changed its method of computing the amount of its assessments, disregarding entirely the table on the back of the policy issued to the plaintiff, which, by the terms of the policy, was made part thereof, and assessed the plaintiff with the sum of $112.80 every two months, and that such sum was arrived at in the following manner: To the plaintiff's age at the date of the policy, to wit, fifty-nine years, was added one-half of the number of years from January 1 of that year, that is, 1882, to January 1, 1895—counting the fractions of a year as a whole year—thus making an arbitrary age of sixty-six years as a basis of assessment. That a new table of assessment was used, which gave a much larger rate per thousand than was used in the old or original table, and it was according to this new and higher rate table that the plaintiff was assessed as of the age of sixty-six years; that this new table of rates contained rates for ages up to eighty years. That the plaintiff had never received any notice of the adoption of this new table of rates, and it was used without his knowledge or consent. That he paid those enhanced assessments because of the forfeiture clause in his policy or certificate of membership.

It is further alleged that about the 1st of February, 1898,

the defendant association, by a resolution of its board of directors and its executive committee, without notice to the plaintiff, and without his consent, assessed and called upon him to pay an assessment of $235.90, a sum over eight times the original amount called for in the table on the back of his policy. That this call had printed upon it the new table of rates to which reference has just been made, in connection with the last assessment, and the sum of $235.90 represented the amount called for therein from a person of the present age of the plaintiff,—that is to say, of the age of seventy-five years, on a policy of $10,000. That the plaintiff paid such last mentioned assessment under protest, because of the fear that in case of non-payment of the same his policy might be forfeited. That about the 1st of April, 1898, another call or notice was sent to the plaintiff, requiring him to pay the same amount; and that this call had the new table of rates, and notice was given the plaintiff to the effect that the bi-monthly calls would thereafter be based thereon. That according to this latter table of rates, the plaintiff would have to pay at the age of seventy-six years, $1,533 for that year, and at seventy-seven $1,665.90, and each succeeding year a larger amount, until at eighty, his bi-monthly assessments for that year would aggregate the sum of $2,167.10 on his policy of $10,000.

It is also charged in the bill that the reserve fund authorized to be raised and maintained, according to the statement of the defendant association, purporting to be made on or about March 18, 1898, amounted to the large sum of $3,306,779.29, and that such reserve fund has for a long period of time, to wit, for twelve years, exceeded the sum of $100,000 over and above outstanding bonded obligations.

It is also charged, that the administration of the affairs and funds of the association has been reckless and extravagant; that the enhanced assessments are illegal and fraudulent, and have been made and enforced as a part of a scheme on the part of the officers and directors of the association

to force the plaintiff and other members, either to pay such fraudulent and excessive rates for their insurance during the remainder of their lives, after having been allured into the association by its specious promises and representations of insurance at low rates, or to drive them out of the association in their old age, when it is impossible for the plaintiff and many others to obtain any insurance at all from other companies, and thereby to compel them to forfeit all the money that they have paid and contributed to the defendant association for so many years past.

Upon the allegations of the bill, the plaintiff prays—

First. For an injunction to restrain the defendant, its agents and attorneys, from collecting any sum upon said call No. 97, dated April 1, 1898, and upon any subsequent call in excess of the rate in force at the date of the plaintiff's becoming a member of the association, or such sum as the court upon hearing of the case may deem just and proper; and to restrain and enjoin the defendant during the pendency of this suit, from in any manner declaring lapsed and void, or in anywise annulling or canceling the policy or certificate issued to the plaintiff, and commanding the defendant to retain the plaintiff as a member and policyholder in good standing, during the pendency of this suit, with the same force and effect as if he had paid said calls or assessments.

Second. That the court, if it be deemed necessary, may cause the defendant association to discover to the plaintiff its books and accounts, showing losses, mortality, expenses, and particularly the salaries of each individual officer, assessments, and matters and things incidental thereto, since the time when the plaintiff became a member of the association, or for such a period of time as the court may deem necessary for the proper ascertainment of the plaintiff's rights in the premises, whereby the correct and true assessments and amounts which should have been at all times levied upon the plaintiff and the other members may be

ascertained, and an accounting had between the plaintiff and defendant in that regard.

Third. That the court determine the true and proper amount of assessments or payments to be made on said call No. 97, together with the subsequent calls hereafter to be made, and that it also determine the amount the plaintiff has already paid in excess of the rate of assessment that should have been levied upon him, and that the defendant may be compelled to refund the same, or apply the same upon calls hereafter to be made.

Fourth. That the defendant may be decreed to apply the reserve fund, mentioned in the certificate of membership issued to the plaintiff, in so far as said reserve fund may be in excess of $100,000 over and above sums represented by outstanding bonds, to the payment of claims in excess of the American Experience Table of Mortality, and to making up any deficiency which may exist in the death fund, as provided in the plaintiff's certificate of membership; and,

Fifth. For process of subpœna to be issued to the defendant; and for such other relief as the nature of the case may require.

The defendant appeared and entered a demurrer to the bill, upon the ground, as stated in the demurrer, that the bill states no such matter as will authorize a court of equity in this jurisdiction to grant the relief prayed as against the defendant, a foreign corporation.

Upon hearing in the court below this demurrer was sustained, and the bill was dismissed, upon the ground as set forth in the decree, "that the court had no jurisdiction of the subject-matter of the bill, and no power to interfere with the internal management of the defendant, a foreign corporation, and that the injunction heretofore issued is hereby dissolved; but this being without prejudice to the plaintiff's right to sue in any court having jurisdiction." It is from this decree that the plaintiff has appealed.

*Mr. Richard C. Thompson, Mr. Charles L. Frailey* and *Mr. A. S. Worthington* for the appellant:

1. The acts complained of in the bill do not affect the complainant solely in his capacity as a member of the Mutual Reserve Fund Life Association, and in such a case the court has jurisdiction to entertain the action.

The basis of the suit set forth in the bill is the breach of a contract entered into by the complainant on the one hand and the defendant on the other; that certain acts of the corporation are alleged to have been illegal, which acts finally led up to an absolute breach of a clear and specific contract, and that the relief sought by the complainant is aimed at the prevention of further breaches seriously affecting the rights of the complainant, not as a member of the corporation, which he undoubtedly is, but as an individual under his contract with it. The following authorities show how far this distinction leads courts to protect the rights of citizens within their own jurisdiction, even though in so doing they may, to some slight extent, touch upon corporate management. *Guilford* v. *Tel. Co.*, 59 Minn. 332; *Prouty* v. *Railroad Co.*, 1 Hun, 635; *Babcock* v. *Railroad Co.*, 9 N. Y. Supp. 845; *Ives* v. *Smith*, 3 N. Y. Supp. 645.

The right of the appellee to do business in this District appears to rest upon the principle of comity. The only statutory reference to foreign insurance companies is the requirement necessary before they may transact their business here—that they shall have "duly constituted some person domiciled in the District, their agent and attorney in fact, for the purpose of receiving for them summonses, writs, and processes, issuing out of any court having jurisdiction in said District," and that "the evidence of such appointment of such agent and attorney in fact, authenticated in a manner satisfactory to the Commissioners of the District or any two of them, shall be filed in the office of such Commissioners. Comp. Stats., D. C., Ch. 15, p. 145, Sec. 167. If

14 Ct. App.—12

the New York courts will take jurisdiction of actions involving contract obligations of foreign corporations, even though certain corporate matters have to be inquired into, as has been shown in the cases cited from that State, it certainly seems reasonable and proper and in accordance with the law of comity that when a citizen of this jurisdiction proceeds to have his contract with a New York corporation enforced in our courts, or a breach of said contract prevented, the same rights should be accorded him here as would be accorded a New York litigant in a New York court in an action brought there against a Washington corporation, even though the suitor here be a member of the New York corporation.

The cases relied on by the appellee (*Mining Co.* v. *Fields,* 64 Md. 151, and *Madden* v. *Electric Light Co.,* 181 Pa. St. 617), are not applicable to the case at bar, except in so far as they sustain the contention of the appellant. The appellant does not ask the court to interfere in any way whatever with the discretionary powers of the directors, or to take hold of or manage the defendant corporation, or to dissolve it or to determine its validity, etc., but only desires to have the association do what he has done—stand by the contract.

2. The rights of a member of a mutual insurance company as a party insured are separate and distinct from his rights and privileges as a member of the corporation. *Insurance Co.* v. *Connors,* 17 Pa. St. 137 ; *Rosenberger* v. *Insurance Co.,* 87 Pa. St. 207 ; *Cohen* v. *Insurance Co.,* 50 N. Y. 610.

The appellant is but asking that which the court has power and jurisdiction to grant. Induced by the appellee to have his life insured because low rates of insurance were vouchsafed to him, he, a citizen of the District of Columbia, entered into a contract with the association, and although by effecting such insurance he became a member of the Mutual Reserve, and as such entitled to certain rights and privileges as a member, he has, during the years which have elapsed since the date of his policy, performed, as an

individual, his part of the contract and carried out its obligations. We respectfully submit that acts which affect the internal management of the association are those which affect the appellant solely in his rights as a member of the same, and that the acts complained of in the bill affect the appellant in his rights as a party insured. That these two are distinct and separate has been shown by the cases just referred to.

3. The relief asked for is such as the court has power to afford; but jurisdiction will be exercised even though a part only of the relief can be granted.

The question before this court is, whether the court below has jurisdiction to entertain the action and grant any relief; for no matter if the remedy afforded be incomplete, if substantial justice can be done thereby, the court will act, although the relief asked for in the bill may be much more than is granted. As in the case of *Singer Co.* v. *Union Co.*, Holmes Rep. 253, it was held that an injunction will be granted to restrain acts in violation of a lawful contract, although the nature of the contract is such that specific performance would not be enforced. In New York it has been laid down that even though the " relief within the power of the court to grant may be incomplete and not commensurate with the injury and loss sustained growing out of the fact that the material interests affected are outside of this jurisdiction," yet " that affords no adequate reason why an attempt in that direction should not be made." *Erwin* v. *Oregon Co.*, 62 How. Pr. 490–492 ; *Telegraph Co.* v. *Railway Co.*, 3 Fed. Rep. 423–429.

4. The bill of complaint states a cause of action. A breach of contract is clearly set forth in the bill. By reference to the policy of insurance it will be seen that a provision is made for an assessment whenever the death fund of the association should become insufficient to meet an existing claim by death, and the amount of each assessment is fixed at "such a sum as has been established by the

board of trustees, according to the age of each member, as per table endorsed hereon." All assessments were required to be made in accordance with the table referred to, and the fair construction of the provision would be that no amount could be called for exceeding that stated in the table.

Having joined the association relying upon the provision just referred·to and having paid the assessments calculated upon that table as of his age of entry for thirteen years, in 1895 the appellee violated and disregarded its contract and without the consent of the appellant or notice to him began to assess him $112.80 every two. months. It will be seen by reference to the table of rates in the record that this sum is not calculated upon the basis thereof in any manner whatsoever, and by no means can it possibly be arrived at by following the rates prescribed therein. When a table of rates of assessment has been made a part of the contract of insurance, assessments must be strictly in accordance therewith. Beach on Corporations, Sec. 592; *Mutual Aid Soc.* v. *Myers*, 11 Weekly Notes of Cases, 541; Niblack on Benefit Associations, Sec. 250, p. 475.

A new table of rates, upon which the aforementioned sum was calculated, was adopted without notice to the appellant, and without his consent, by a resolution of the board of directors. Such a resolution was not binding upon the appellant without his consent, and in view of the contract stipulations, that assessments based thereon were void because they should be according to the table of rates on the back of his policy. No by-law, and much less a mere resolution of the governing body of an association, passed without the consent of or without notice to the policyholder can alter or impair the obligation of the contract of insurance or take away a vested right. *Insurance Co.* v. *Connors*, 17 Pa. St. 137; *Martin* v. *Insurance Co.*, 45 Md. 52; *Stewart* v. *Insurance Co.*, 64 Miss. 499; *Insurance Co.* v. *Harvey*, 45 N. H. 292; Bliss on Life Ins., 767; Am. & Eng. Encyc. L. (2d Ed.), 96, and cases cited. And this rule is ap-

plicable to the contracts of a mutual company. *Elkhart Mut. Aid* v. *Houghton*, 98 Ind. 149 ; Bacon on Ins. (Ed. of 1894), Sec. 180 ; *Cluff* v. *Mut. Ben. Life*, 99 Mass. 325.

We can not understand how, a breach of contract can be more distinctly alleged. The appellant's policy provides that assessments shall be made according to the table endorsed thereon, and for thirteen years they were so made. An assessment was then levied according to another table, entirely different from that endorsed on the back of his policy, for an amount many times as great as that called for by the former table and which could not have been arrived at by any calculation based thereon. How, then, could an assessment based upon the new table be valid when considered in the light of that provision in the policy which expressly excludes all other tables than the one endorsed upon it ? For an assessment in violation of the contract of insurance is void. Joyce on Insur., Secs. 1253 and 1391 ; *Stewart* v. *Insurance Co.*, 64 Miss. 499 ; *Mutual Assn.* v. *Essender*, 59 Md. 463 ; *Underwood* v. *Legion of Honor*, 66 Iowa, 134 ; *Baker* v. *Insurance Co.*, 51 Mich. 243.

It may be argued that the by-laws in existence (if any there were) at the date of the policy should have been made a part of the bill because they were a part of the contract. It is unnecessary, we think, that this should have been done, as when a by-law is inconsistent with the terms of the certificate of insurance the terms of the certificate prevail. Niblack on Benefit Associations, Sec. 147. And if the by-laws (if any) were not inconsistent with the certificate or policy a reference to them would be wholly unnecessary for the purposes of this action, as the method of levying assessments, for the violation of which this suit is brought, is distinctly set forth in the policy of insurance.

Again, it may be argued that by paying the former illegal assessments the appellee waived his right to test the validity of the last assessment; but even if a persons pays illegal assessments in a mutual company he is not estopped from

denying the right of the company to levy such assessments, nor from questioning their legality and in all respects claiming his rights under the contract of insurance. Niblack on Benefit Associations, Sec. 143; *Insurance Co.* v. *Knight,* 162 Ill. 470; *Shultz* v. *Insurance Co.,* 59 Minn. 308–315.

5. The bill alleges fraud and mismanagement. The appellant charges a violation of the appellee's representations, inducing the making of the contract, the fraudulent diversion of the premiums paid by the appellant to purposes other than those to which they should have been devoted, and a series of other acts indicating without doubt a most flagrant exercise of bad faith and fraud, which has produced irreparable injury and loss to the appellant, unless the relief asked for in the bill be afforded. The bill also alleges a discrimination among the policyholders, which is in direct violation of the policy of insurance. Such discrimination renders the assessment void. Joyce on Ins., Secs. 350, 368.

6. There is no adequate remedy at law. Only by a continuation of his policy and the poor privilege of paying assessments in accordance therewith can the remedy be commensurate with the injuries he has suffered. With the future unprovided for, no redress of past injuries would be worth the bringing of an action, because the ultimate purpose which prompted the appellant to insure his life would be entirely defeated.

*Mr. Andrew A. Lipscomb, Mr. Frank R. Lawrence, Mr. George Burnham, Jr.,* and *Mr. Gordon T. Hughes* for the appellee:

1. The Supreme Court of the District of Columbia has no jurisdiction over the subject matter of the bill, no authority to grant the relief prayed for, and no power to enforce a decree granting such relief. The courts of one jurisdiction will not interfere in controversies relating to the internal management of the affairs of a corporation organized in another

jurisdiction.   This is settled.   Thompson on Corporations, Sec. 7904; *Copper Co.* v. *Field*, 64 Md. 151; *Wilkins* v. *Thorne*, 60 Md. 253; *Smith* v. *Insurance Co.*, 14 Allen, 336; *Williston* v. *Railroad Co.*, 13 Allen, 400; *Construction Co.* v. *Railroad Co.*, 135 Mass. 34; *Madden* v. *Electric Light Co.*, 181 Pa. St. 617; *Bank* v. *Adams*, 1 Parsons' Cases (Pa.), 534; *Gregory* v. *Railroad Co.*, 40 N. J. Eq. 38; *Stafford* v. *Mills Co.*, 13 R. I. 310; *Howell* v. *Railroad Co.*, 51 Barb. 378; *Berford* v. *Iron Mines*, 4 N. Y. Supp. 336; *Fisher* v. *Insurance Co.*, 20 J. & S. (N. Y.), 179; *House* v. *Cooper*, 70 Barb. 158, 171; *Chase* v. *Vanderbilt*, 5 J. & S. (N. Y.), 334, 356; *Coal Co.* v. *Coal Co.* (1859), 30 Barb. 159, 171; *D. L. & W. Co.* v. *N. Y. Co.*, 12 Misc. (N. Y.), 230; *Leary* v. *Columbia Co.* (1897), 82 Fed. Rep. 775, 777; Murfree on Foreign Corporations, Sec. 226.   The appellant, by reason of his prayer for relief, brings himself within the reasoning of these cases and thus falls within the prohibition upon the courts of the District from interfering with the internal affairs of the appellee association.

The appellant, in support of the jurisdiction of the court below to grant the relief prayed for, evidently relies upon the appointment by the appellee of a duly constituted agent in the District, the agent presumably being appointed under the provisions of the Act of Congress of 1887 (24 Stat. 366). But we deny that the Act of 1887 conferred upon the courts of the District jurisdiction to grant relief such as that now prayed for as against a foreign corporation such as the appellee.   Legislation of various States in regard to foreign corporations may be divided into two classes.   In the first class fall all statutes which impose upon foreign corporations seeking to do business within the borders of the enacting State, the condition that they shall, in substance, become domestic corporations of that State; that they shall be subject to all the duties and obligations of its domestic corporations; that they be either adopted, as domestic corporations, by the new State, or under its statutes be reincorporated, reorganized or consolidated with some other corporation or

corporations. In such case, clearly, the foreign corporation ceases to be such when it subjects itself to these conditions, and becomes, particularly for purposes of jurisdiction, a citizen or resident of the State which thus domesticates it. The second class of legislation includes all statutes which simply recognize foreign corporations and their continuance in existence as such, and permit them, as foreign corporations, to conduct their operations upon complying with certain conditions, relating generally to the appointment of a resident agent upon whom process may be served. Such statutes do not make foreign corporations residents of the State of enactment, nor do they adopt, or domesticate, or recreate them as domestic corporations, nor do they purport to do so. On their face, they recognize the foreign organization and its continuance. And upon certain conditions they grant to it certain licenses or privileges. Whether a given statute relating to the status of a foreign corporation falls within the first or the second class is purely a question of legislative intent, to be decided as a matter of construction. See *Railroad Co.* v. *Harris*, 12 Wall. 65, 83; *Penn. Co.* v. *Railroad Co.*, 118 U. S. 290; *Uphoff* v. *Railroad Co.*, 5 Fed. Rep. 545; *James* v. *Railroad Co.*, 46 Fed. Rep. 47; Thompson on Corporations, Sec. 7890, *et seq.*

The second class, the one which involves the mere grant of privileges or powers to the foreign corporations as existing, without more, is made up of statutes of entirely different nature from the first, the common example of the second class being an act permitting a foreign corporation to do business within the State upon condition that it appoint a resident agent for the service of process upon the foreign corporation as such. See *Goodlett* v. *Railroad Co.*, 122 U. S. 391; *Penn. Co.* v. *Railroad Co.*, 118 U. S. 290; *Smith* v. *Insurance Co.*, 14 Allen, 336; *Copper Co.* v. *Field*, 64 Md. 151. That the Act of 1887, relating to the appointment of agents within the District, simply recognizes foreign insurance companies, as such, and permits them as such to carry on their busi-

ness within the District upon condition that they appoint
an agent for the service of process, and that this act does
not domesticate such foreign corporations, or make them
residents of the District, is, within the authorities already
cited, clear. See, also, *Insurance Co.* v. *Warwick*, 20 Grat. 614;
*Cowardin* v. *Insurance Co.*, 32 Grat. 445; *Guilford* v. *Tel. Co.*,
59 Minn. 332; *Kimball* v. *Railroad Co.*, 31 N. E. Rep. 697;
*Ives* v. *Smith*, 3 N. Y. Sup. 645; *Gibbs* v. *Insurance Co.*, 63
N. Y. 114; *Barbour* v. *Paige Hotel Co.*, 2 App. D. C. 174.

2. The bill does not state such a case as would entitle
the appellant to the relief prayed for.

The allegation of the bill as to what constitutes the con-
tract between the appellant and the appellee is simply the
statement of a conclusion of law and is of no force or effect
upon demurrer. *Dillon* v. *Barnard*, (1874), 21 Wall. 430;
*Swan* v. *Life Assn.*, 20 App. Div. 255, affirmed in 155
N. Y. 9. Moreover, the allegation of the bill to the effect
that the contract of membership is made up of the applica-
tion, the certificate issued thereon, and the representations
of the appellee referred to, is, as matter of law, erroneous.
These are not the only elements of the contract existing be-
tween the member of a mutual assessment insurance corpo-
ration and the corporation itself. The constitution and
by-laws of such a corporation are part of the contract of
insurance between it and its members. Members of a mu-
tual association are conclusively presumed to know its
constitution and by-laws, which constitute a part of the
executive contract between it and its members, and are
the very rules and regulations for the government and con-
duct of its affairs, enacted within the limits and by virtue
of the power conferred in the charter or articles of associa-
tion. They must be looked to for the purpose of discover-
ing what the contract is. *Hass* v. *M. R. Assn.*, 118 Cal. 69;
*Supreme Commandery* v. *Ainsworth*, (1882), 71 Ala. 436, 443;
*Barbot* v. *Mutual Reserve Fund Life Association*, 28 S. E. Rep.
(Ga.) 498; *Suttz* v. *Mutual Reserve Fund Life Association*, 145

N. Y. 563, 568. And this applies whether or not the constitution and by-laws are referred to in the certificate of membership. If they are not referred to, they are still binding upon the members of the association, and constitute a part of the contract of membership held by each member. *Davidson* v. *Ben. Soc.*, 39 Minn. 303; *Treadway* v. *Insurance Co.*, 29 Conn. 68.

For all that appears in the bill, sufficiently pleaded, there may be provisions in the constitution and by-laws of the appellee association permitting it to levy assessments such as those complained of—changing the rate, if necessary, to correspond with the actual mortality experience. Certainly, no court would attempt to interpret or give effect to a contract of this description, when so important an element of it as the constitution and by-laws of the association itself was withheld.

Further, the bill does not place before the court the statutes of the State (New York), under which the appellee association was incorporated. Yet it is well settled that those statutes constitute a part of the contract between the association and each of its members; and the courts will not permit such a member to set up ignorance in fact of the statutes which are the very foundation and which constitute the fundamental law of the association. *Stohr* v. *Society*, 82 Cal. 557; *Wanschaff* v. *Masonic Society*, 41 Mo. App. 206, 218; *McCracken* v. *Hayward*, 2 How. 608; *Fry* v. *Insurance Co.*, 31 Fed. Rep. 197; *Weingartner* v. *Insurance Co.*, 32 Fed. Rep. 314; *Conductors' Assn.* v. *Robinson*, (1893), 147 Ill. 138; Cooke on Life Insurance, (1891), Sec. 11; Joyce on Insurance, (1897), Sec. 194. And members of a mutual insurance association are bound by the statutes of the State of incorporation, whether they reside in that State or elsewhere. *Fry* v. *Insurance Co.*, 31 Fed. Rep. 197; *Bockover* v. *Life Assn.*, 77 Va. 85.

Another element of the contract of membership between the appellant and appellee which upon the bill and demur-

rer thereto is not before the court, lies in the charter, or articles of incorporation of the appellee. *Supreme Lodge* v. *Knight*, 117 Ind. 489; *Simiral* v. *Mut. Soc.*, (1865), 18 Ia. 319; *Hallenberg* v. *I. O. of B. B.*, 94 N. Y. 580, 584.

Until the court has before it all the elements which, under the settled authorities, constitute the contract of membership between the appellant and the appellee, it is not in position to determine the rights of the former as against the latter, nor can it accept the conclusion of the appellant as to what constitutes his contract. It is the conclusion and decision of the court, not the inference of the pleader, that must determine the rights sued upon.

3. An additional reason why this bill can not be maintained is that, although he alleges the contrary, the appellant has an adequate remedy at law. If the assessment levied upon him is for an excessive amount, he may tender the proper amount, and if the association refuses to accept it, and declares his certificate of membership forfeited, the member may at once bring an action at law for damages for breach of the contract of insurance. *Hancock* v. *Insurance Co.*, (C. C. U. S., E. D. of Va., 1873), 4 Bigelow's Ins. Rep. 488; reported also in 2 Ins. Law J., No. 12, p. 903, and Am. L. Reg. No. 2, p. 103; *Cohen* v. *Insurance Co.*, 50 N. Y. 610; *Smith* v. *Insurance Co.* (1873), Central Law Journal of Feb. 12, 1874 and note; *Insurance Co.* v. *Poettker*, (Ohio, 1875), 5 Bigelow's Ins. Rep. 449; *McKee* v. *Insurance Co.*, (1859), 28 Mo. 383; May on Insurance, (3d. Ed.), Secs. 350, 568, and notes; Bliss on Life Insurance, (2d Ed.), Secs. 386, 394; Joyce on Insurance, Sec. 1659.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

As we have seen, it is alleged in the bill that the defendant is a New York corporation, incorporated under the laws of that State, and that it is a mutual life insurance corporation, doing business on the co-operative or assessment

plan, and that its home or principal office is in the city of New York; though it has an agent duly appointed in this District, and a place of business therein. But though a foreign corporation, and a mutual insurance company, and therefore necessarily dependent to a large extent upon its charter or articles of association, and by-laws made in pursuance thereof, for the definition of its powers, and the rights and duties of its members, neither the charter or articles of association nor the by-laws are exhibited with the bill; and the court, therefore, is left without knowledge in regard to them. The mere allegations of the effect and operation of the charter or by-laws of the defendant are not facts that are admitted by the demurrer, but construction of law, merely. A demurrer never admits the mere averment of the pleader, or the construction of an instrument; nor does it admit as true the conclusions or inferences drawn by the pleader from facts alleged, or which should have been alleged, in the bill. As said by the Supreme Court, in the case of *Dillon* v. *Barnard,* 21 Wall. 437: "A demurrer only admits facts well pleaded; it does not admit matters of inference and argument, however clearly stated; it does not admit, for example, the accuracy of an alleged construction of an instrument, when the instrument itself is set forth in the bill, or a copy is annexed, against a construction required by its terms; nor the correctness of the ascription of a purpose to the parties when not justified by the language used. The several averments of the plaintiff in the bill as to his understanding of his rights, and of the liabilities and duties of others under the contract, can, therefore, exert no influence upon the mind of the court in the disposition of the demurrer." See, also, case of *Swan* v. *Mutual Reserve Fund Life Assn.,* 155 N. Y. 9.

It is alleged in the bill that the contract of insurance between the plaintiff and the defendant association is made up of the application for insurance, the certificate issued to the plaintiff upon such application, the printed rules and

regulations contained therein, together with the representations by the defendant, in the circulars and otherwise as set forth in the bill. This allegation as to what constitutes the contract, is simply the statement of a conclusion of law, and is of no force or effect upon the demurrer, especially as the by-laws, rules and regulations, and the circulars referred to are not set out as part of the bill.

The contract of insurance here involved is of a mutual character, as its title imports, and the plaintiff became a member of the association by obtaining the certificate of membership, and as such member we may suppose that he was entitled to certain rights in the administration of the affairs of the corporation. To determine what those rights were or are, the constitution or articles of association and the by-laws should have been exhibited as part of the bill, for they are required to be consulted and construed in determining the nature of the contract, and the rights and duties of the parties thereto. And though such constitution and by-laws may not be referred to in the certificate of membership, yet they are binding upon the members of the association, and constitute a part of the contract of membership.

By becoming a member of a mutual association, such as the defendant in this case, one is conclusively presumed to know its constitution and by-laws, and if he fails to acquaint himself with them, he can not escape their force and operation by setting up his want of actual knowledge of them, nor by showing that they were not referred to in the certificate held by him. This principle is established by many well considered cases, a few of which it will be sufficient to refer to in this connection. *Hass* v. *Mutual Reserve Assn.*, 118 Cal. 69; *Barbot* v. *Mut. R. Fund Life Assn.*, 28 S. E. Rep. (Ga.), 498; *Supreme Commandery* v. *Ainsworth*, 71 Ala. 436, 443; *Suttz* v. *Mut. Reserve Fund Life Assn.*, 145 N. Y. 563, 568.

The rights and liabilities of parties in a mutual co-operative insurance company are essentially different from the

rights and liabilities in a stock insurance company. This difference is remarked upon by Mr. May in his work on Insurance, Sec. 146. He says: "Mutual insurance, it is truly observed, is essentially different from stock insurance; and much of the litigation that has grown out of this species of insurance has been owing to inattention to this difference. Its original design was to provide cheap insurance by means of local associations, the members of which should insure each other. Such associations are in their nature adapted only to local business. They need many by-laws and conditions that are not required in stock companies; and it is necessary and equitable that each person who gets himself insured in them should become subject to the same obligations towards his associates that he requires from them towards himself. If the officers have discretionary power as to the terms of the contract, or even as to its form, it is obvious that different parties may become members upon different terms and conditions, and thus the principle of mutuality will be completely abrogated." And so again, in section 548, the author says: "The principle which lies at the foundation of mutual insurance, and gives it its name, is mutuality; in other words, the intervention of each person insured in the management of the affairs of the company and the participation of each member in the profits and losses of the business, in proportion to his interest. Each person insured becomes a member of the body corporate, clothed with the rights and subject to the liabilities of a stockholder. He is at once insurer and insured."

And in Niblack on Beneficial Societies, at section 136, the same principle is stated, with the authorities for its support. The author says: "An ordinary life insurance policy contains the whole contract of insurance; but the certificate of membership in a mutual benefit society is only a part of the written evidence of the contract. . . . The charter, constitution, and by-laws of such societies are made to contain the whole plan of insurance, designating who shall be

the beneficiaries of its members, fixing the amount of the benefit fund, and setting forth the terms of the entire contract. In such cases membership in the society carries with it a specific amount of insurance."

With these well settled principles in view, it would clearly not be safe or proper to proceed upon the assumption that the certificate of membership exhibited with the bill contains the entire and exclusive evidence of the contract, in the absence of the constitution or articles of association and the by-laws of the corporation. The certificate of membership having been issued and accepted subject to the provisions and conditions of those articles and by-laws of the association, the certificate must be construed in reference and in subordination to such articles and by-laws; and it may be that some of the articles or by-laws may have a very material bearing in the construction of the certificate, and hence they should have been made a part of the case as stated by the bill.

But apart from this defect in the bill, in considering the case on demurrer, there is a broader and more insuperable objection to the bill than that just referred to, and that is the want of power and jurisdiction in the court to extend its remedial processes to restrain and control the internal affairs and administration of corporate duties and functions of the defendant, a foreign corporation. It was upon this ground that the court below acted in sustaining the demurrer and dismissing the bill.

The principal ground of complaint appears to be the alleged or supposed illegal enhancement of the rate of assessments levied and collected, and attempted to be collected, of the plaintiff, over and above the rate specified in the table of rates endorsed on the certificate of membership. This increased rate of assessment would appear to be the result of a change of policy on the part of the defendant association, founded upon a supposition that it was inequitable and unjust that the assessment should be based upon the age of

the member at the time he obtained his certificate of membership, and that the just and more equitable rule would be to make the assessments with reference to the age of the member at the time the call is made. This may, and certainly would appear to work great hardship upon the older class of members. But the question is, has a court of equity in this District the power or jurisdiction to correct the wrong, if it be one? If this were an action to recover money due on the policy, or an action by the defendant association to recover of the plaintiff money due for assessments, or any money obligation of one party to the other, then, in all such cases, and others that might be suggested, instituted in the courts of this District, the jurisdiction of a court of equity here might be invoked to prevent injustice and wrong. In all such cases, the party aggrieved has a right to sue and obtain effective remedy against foreign insurance companies, having an agency here and doing business in this District. This is provided for by the act of Congress of 1887, Ch. 46, Sec. 4 (25 Stat. 369). That act provides for the due appointment of an agent in this District, as a condition upon which a foreign insurance company is allowed to do business here,—the agent being made competent to receive service of process in suits against the company appointing him. But that act, manifestly, does not contemplate or apply to a case such as the present. It does not contemplate suits here against foreign insurance companies, the object and effect of which would be to restrain their home administration, and to ransack and overhaul their internal affairs, in order to determine whether their proceeding has been in all respects legal and in accordance with the law of their creation, and of their by-laws, as they may affect their individual members. It is clear, the Act of 1887 does not attempt to make foreign insurance companies doing business here under this statute, corporations of this District. For, as said by the Supreme Court in the case of *Penn. Co.* v. *St. Louis, etc., RR. Co.*, 118 U. S. 290, 296: "To make such a company a cor-

poration of another State, the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the legislature, and such allegiance as a State corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the State conferring such powers." The Act of 1887 contains no language that could imply creation or adoption of these foreign insurance corporations, but only the grant of privileges or powers to existing corporations of other jurisdictions, upon complying with certain conditions. The class of laws granting such privileges and powers, say the Supreme Court, in the case just referred to, "are common in authorizing insurance companies, banking companies, and others to do business in other States than those which have chartered them." Such acts do not extend the jurisdiction of the courts of one State and authorize them to reach over their territorial limits into the jurisdiction of another State, and to bring into review and revision the corporate acts and internal affairs of the local corporations of the latter State. Such a power, if attempted to be exercised, would be futile and ridiculous. Indeed, neither the legislatures of the States, nor the Congress of the United States, could confer such power.

In this case, it is proper to observe the prayer of the bill. The prayer is, that an injunction may issue to restrain the defendant and its agents from collecting any sum upon call No. 97, dated April 1st, 1898, and upon all subsequent calls in excess of the rate in force at the date of the certificate of membership issued to the plaintiff, and from in any manner declaring lapsed and void the policy or certificate held by the plaintiff, and commanding the defendant to retain the plaintiff as a member and policyholder in good standing during the pendency of this suit, with the same force and effect as if he had paid all said calls or assessments.

Now, in the first place, all assessments and dues, required

14 Ct. App.—13

to be paid by the certificate holder, as also the amount of the policy itself by the defendant, are payable and are required to be paid, at the home office of the defendant, in the city of New York. And this being so, it is a little difficult to imagine how a court in this District could restrain and direct the action of the corporation at its home office in the city of New York. Suppose the injunction to be issued as prayed, and to be served upon an agent in this District, and the board of directors of the corporation were to refuse to recognize it, and proceed to forfeit and declare null and void the certificate or policy of the plaintiff, for default of payment of assessments, as according to the terms of the certificate they are authorized to do. How would or could the court in this District deal with such conduct? For the disregard or violation of an injunction the ordinary remedy is a proceeding and punishment for contempt. But how could that be made effectual as against parties beyond the jurisdiction of the court, and who claim to be proceeding in accordance with what may be legal authority derived from their own State? It is very clear, therefore, that this prayer for an injunction could not be granted.

The next prayer is, that the defendant be required to discover to the plaintiff its books and accounts, showing losses, mortality, expenses, and particularly the salaries of each individual officer of the association, assessments and matters and things incident thereto, since the plaintiff became a member of the association, etc., whereby correct and true assessments and amounts which should have been at all times levied upon the plaintiff and the other members of the association may be ascertained, and that an accounting be had between the plaintiff and defendant.

It is hardly necessary to say that a court of equity in this District has no such power or jurisdiction over the affairs of a foreign corporation as to require such discovery and accounting as prayed for by this bill. Upon such a theory as is here propounded, no corporation could ever venture to

conduct business beyond the limits of the State of its creation. According to the principle of this prayer, any business transaction of an insurance company which might take place in a State other than that of the company's creation, and which could be alleged to affect the assets of the company and the interest of its members, would furnish the ground for calling for discovery, the production of books, and for a general accounting. Upon any such principle, it would be very perilous for any insurance company to attempt to do business beyond the limits of the State of its creation. It might have a half dozen courts, in as many different States, requiring discovery, and demanding the production of books, and directing the statement of accounts, all at the same time. There is no principle that would justify such proceeding.

Then, again, it is prayed that the true and proper amount of assessments to be made be determined, and that it also be determined what amount the plaintiff has already paid in excess of the rate of assessment that should have been levied upon him, and that the defendant be compelled to refund the same, and that there be directed and required to be made a proper application of the reserve fund in accordance with the requirements of the certificate of membership.

This prayer, like the preceding, requires a complete overhauling and scrutiny of the entire administration of the internal affairs of the corporation, from the time that the plaintiff became a member down to the present time; and nothing short of a full and complete account would enable the court to decree in accordance with the prayer.

It is thus apparent, from the statement of the facts alleged in the bill, and from the several prayers based thereon, that the relief sought, if it could be granted, would require the control, direction and revision of the internal affairs of the corporation, by a court of equity of this District. This we think, upon the clearest authority, can not be done. The law would seem to be too well settled to admit of a question,

that where the acts complained affect the plaintiff in his
rights of corporator, or stockholder, or as a member of a
mutual benefit or insurance company or other corporation,
and the acts are those of the corporation, done and performed
in the course of the administration of the corporate affairs,
and especially when claimed to have been done and per-
formed, or authorized to be done, by virtue of authority de-
rived from its charter or by-laws, the courts of another State
or jurisdiction will not interfere or attempt to exercise juris-
diction to direct, control, or revise corporate action.    To
assume jurisdiction over the affairs of a foreign corporation,
would inevitably lead to conflicting decisions, resulting in
confusion and needless litigation, and the making of orders
and decrees simply to be contemned, because not capable of
being enforced.    The court, if it were to undertake to act in
such cases, has no power, and therefore can not bring the
officers, or the corporate books, or the assets of the corpora-
tion within its jurisdiction, to be subject to its process.    Its
decrees could only be enforced by proceedings for contempt,
and yet there would be no person here, subject to that pro-
cess, to be coerced to act for the corporation.    The mere local
agent, clearly, would not be such person.    It may well be
said, therefore, as was said by the court in the case of *Leary*
v. *Columbia River, etc., Co.,* 82 Fed. Rep. 775, on an appli-
cation very analogous to the present, that "the authorities
cited by counsel for the defendant corporation clearly and
strongly show that courts having jurisdiction to enforce their
decrees in the State where the corporation has its home office
should be resorted to in all cases where it is necessary to in-
quire into and regulate the internal affairs of the corpora-
tion," and not to courts of a different State or jurisdiction.
And without stating the facts of each particular case, we
deem it sufficient to refer generally to some few of the lead-
ing and more important cases upon this subject, in support
of the conclusion that we have stated.    And for this purpose
we refer to *Fisher.* v. *Charter Oak Life Ins. Co.,* 20 J. & S. 179;

*Howell* v. *Chicago & Northwestern R.R. Co.,* 51 Barb. 378; *North / State Copper Co.* v. *Field,* 64 Md. 151; *Wilkins* v. *Thorne,* 60 Md. 253; *Smith* v. *Mutual Life Ins. Co., of New York,* 14 Allen, 336; *Kansas & E. R. Const. Co.* v. *Topeka S. W. R.R. Co.,* 135 Mass. 34; *Pierce* v. *Assurance Soc.,* 145 Mass. 56; *Kimball* v. *St. Louis, etc., R.R. Co.,* 31 N. E. Rep. (Mass.), 697; *Stafford* v. *Am. Mills Co.,* 13 R. I. 310; *Madden* v. *Electric Light Co.,* 181 Pa. St. 617.

For the reasons we have stated, we shall affirm the decree of the court below, but without prejudice to the right of the appellant to sue and maintain his action in any proper court having jurisdiction of the subject matter; and it is so ordered

*Decree affirmed.*